## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORRINNE J. SUAREZ | : | CIVIL NO.: 1:21-CV-00023-SES |
| *o/b/o E.S., a Minor,* | : | |
| | : | (Magistrate Judge Schwab) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| *Acting Commissioner of* | : | |
| *Social Security,* | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Corrinne J. Suarez ("Suarez") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her minor son's ("E.S.") claim for supplemental security income benefits.  Because the

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while an action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision is supported by substantial evidence, we recommend the court affirm the Commissioner's decision.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 10-1* to *10-8*.[2]  Plaintiff applied for benefits under Title XVI on December 6, 2018. *Doc. 1* at 2.  This application was denied on April 18, 2019. *Id.*  Plaintiff then filed an appeal by way of a Request for Hearing filed on July 23, 2019. *Id.*  Plaintiff appeared before Administrative Law Judge ("ALJ") Lawrence J. Neary on March 4, 2020. *Id.*  On March 30, 2020, a Notice of Unfavorable Decision was issued by ALJ Neary. *Id.*  Plaintiff's claim for Title XVI benefits was denied at Steps Four and Five of the analysis of the ALJ, who determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the listings or of the listed impairments. *Id.*  Plaintiff filed a timely Request for Review of Hearing Decision/Order to the Social Security Appeals Council, who issued a Notice on November 3, 2020, denying the Plaintiff's request for review. *Id.*  Plaintiff has exhausted all administrative remedies. *Id.*  This makes the ALJ's decision the final decision of the Commissioner subject to review by this court.

---

[2] The facts of the case are well known to the parties and will not be repeated here.  Instead, we will recite only those facts that bear on Suarez's claims.

Suarez filed this action on January 6, 2021. *Doc. 1.* The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 9, 10.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 8.* The parties then filed briefs, *see docs. 15, 16*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*,

3

48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether E.S. is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive supplemental security income pursuant to Title XVI of the Social Security Act, a claimant under the age of eighteen must demonstrate that he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906.

4

The ALJ follows a three-step sequential-evaluation process to determine whether a child claimant is disabled. *See* 20 C.F.R. § 416.924.  Under this process, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has an impairment or combination of impairments that is severe; and (3) if so, whether the child's severe impairment (or combination of impairments) meets, medically equals, or functionally equals one of the disability listings. *Id*.

If the analysis proceeds to step three, the ALJ must determine whether a child's impairment meets, medically equals, or functionally equals a disability listing. *Id*.  Whether a child's impairment functionally equals a disability listing is analyzed in terms of six domains of functioning. 20 C.F.R. § 416.926a(b).  "These domains are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical wellbeing. *Id*.  When determining whether an impairment is functionally equivalent to a listing, the ALJ considers the effects of all the child's impairments, including those impairments that the ALJ does not identify as severe at step two of the analysis. 20 C.F.R. § 416.926a(a).

An impairment is functionally equivalent to a disability listing if it results in a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id*. A "marked" limitation is one that seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "'[m]arked" limitation also means a limitation that is "more than moderate" but "less than extreme.'" *Id*. An "extreme" limitation is one that very seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "'[e]xtreme" limitation also means a limitation that is "more than marked.'" *Id*.

The ALJ uses a "whole child" approach in determining whether an impairment is functionally equivalent to a listing. *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach*, SSR 09-1P, 2009 WL 396031 (Feb. 17, 2009). Under this approach, the ALJ begins "by considering the child's functioning without considering the domains or individual impairments." *Id*. at 1. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities," and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. at 2. An impairment "may have effects in more than one domain" and limitations caused by an impairment must be evaluated "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)).

Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

The ALJ's disability determination must also meet certain basic substantive requirements. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision Denying E.S.'s Claim.

The ALJ evaluated E.S.'s claim at each step of the sequential evaluation process. *Admin Tr.* at 11-17. At step one, the ALJ found that E.S. has not engaged in substantial gainful activity since his application date of December 6, 2018. *Id.* at

7

12.[3]  Next, at step two, the ALJ found that E.S. has medically determinable severe impairments of autism spectrum disorder, learning disorder in reading, and oppositional defiance disorder. *Id.*  Then, at step three, the ALJ determined that E.S. does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 in effect on the date the ALJ issued his decision. *Id.* at 12-13. Additionally, the ALJ determined that E.S. does not have an impairment or combination of impairments that functionally equals the severity of the listings. *Id.* at 13-16.

As to this latter determination, addressing the six domains of functioning, the ALJ concluded that "the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." *Id.* at 16.  More specifically, the ALJ found that E.S. has: (1) less than a marked limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) a marked limitation in the ability to

---

[3] E.S. was born on January 25, 2008. *Admin Tr.* at 12.  The ALJ notes that E.S. is a "school-age child" and states that "[t]here is no evidence of work activity on or after the application date." *Id.*

care for himself; and (6) less than a marked limitation in health and physical well-being. *Id.* at 14. Based on this analysis, the ALJ determined that E.S. "is not disabled under section 1614(a)(3)(C) of the Social Security Act." *Id.* at 17.

## V. Discussion.

Suarez contends that the ALJ erred by finding that E.S. had less than marked limitations in the functional domains of acquiring and using information, interacting with others, and attending and completing tasks. We conclude that the ALJ did not err in his findings and that substantial evidence supports his decision.

### A. The ALJ's decision that E.S.'s impairments did not functionally equal a listing is based on substantial evidence.

Suarez argues that the ALJ's finding that E.S. has no marked limitations in the functional domains of acquiring and using information, interacting and relating with others, and attending and completing tasks is not based on substantial evidence. Suarez contends that the ALJ did not properly consider E.S.'s impairments under the analysis of the functional domains and that if he had, then the ALJ would have found E.S. to have a marked limitation in more than one functional domain. But to the extent that Suarez asks this Court to re-weigh the record evidence or make new factual findings, this Court may not invade the ALJ's province as finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion could have been reached but whether substantial evidence

9

supported the ALJ's decision." *See Daub v. Clovin*, No. 3:15–CV–1066, 2015 WL 8013037, at *9 (M.D. Pa. Dec. 7, 2015).  However, for the sake of completeness, we will explain why substantial evidence supports the ALJ's finding that E.S. has a less than marked limitation in the functional domains of acquiring and using information, interacting and relating with others, and attending and completing tasks.

Suarez argues that the ALJ failed to properly consider evidence such as E.S.'s Individualized Education Plan (IEP) (*Admin. Tr.* at 295) and Psychological Re-Evaluation (*Admin. Tr.* at 202).  Because some of Suarez's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Suarez's, filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL

1172982, at *7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the

11

"[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations

provide that "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and

"consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her

consideration of the other factors. *Id.*  But if there are two equally persuasive

medical opinions about the same issue that are not exactly the same, then the ALJ

must explain how he or she considered the other factors. 20 C.F.R.

§§ 404.1520c(b)(3), 416.920c(b)(3).

**1. Substantial evidence supports the ALJ's decision that E.S. has a less than marked limitation in the functional domain of acquiring and using information.**

The ALJ set forth the general standards that apply regarding the domain of

acquiring and using information.

> This domain considers how well a child is able to acquire or
> learn information, and how well a child uses the information he
> has learned (20 C.F.R. 416.926a(g)).

The regulations provide that a school-age child (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what he has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing his own ideas, and by understanding and responding to the opinions of others (20 C.F.R. 416.926a(g)(2)(iv)).

Social Security regulation 20 C.F.R. 416.926a(g)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences, and has difficulty explaining what he means.

*Admin. Tr.* at 58.

After setting forth the above standards that apply to the domain of acquiring and using information, the ALJ reasoned and concluded:

> <u>Since February 29, 2016, the claimant has had less than marked
> limitation in acquiring and using information as a result of the
> impairments present at the CPD.</u>  The record reflects some
> limitations with regard to the claimant's learning abilities, but
> does not indicate that these difficulties have been the result of
> inattention or hyperactivity.

*Id*. (Emphasis in original)

Thus, the ALJ determined based on his review of the record that E.S. had a less than marked limitation in the functional domain of acquiring and using information. *Id.*  Suarez, however, argues: (1) E.S. has difficulty with attention and sitting still; (2) teacher notations which stated that E.S. needed educational assistance; (3) teacher notations regarding weekly issues with poor attention and concentration and being disruptive in class; (4) E.S. is diagnosed with autism, oppositional defiant disorder and learning disorder; (5) E.S. does not complete his homework because he gets frustrated if he does not understand it, so he crumples it and rips it up. *Doc. 15* at 15-17.

We find that the ALJ properly addressed all of these limitations.  Regarding E.S.'s need for educational assistance, the ALJ observed that E.S.'s IEP states that had passing grades in all of his subjects except for math, which he scored an F in. *Admin. Tr.* at 15.  The ALJ also noted that E.S.'s IEP indicates that although E.S. received an F in math, he is very capable of being successful and that his failing grade is largely due to a failure to make up work rather than a lack of ability. *Id.* The ALJ further referenced the fact that E.S. scored in the average range for math

15

problem solving, numerical operations, and alphabet writing fluency. *Id.*
Additionally, the ALJ relied on Suarez's own testimony claiming that E.S. is "great
at math." *Id.*

Regarding E.S.'s poor attention and concentration, the ALJ referenced the
February 2019 mental status examination, which showed that E.S. presented as
alert and oriented to person, place, and time and exhibited average intellectual
functioning. *Id.*

Regarding E.S.'s autism diagnosis, the ALJ considered this limitation, but
found a less than marked limitation because E.S. presented with a full-scale IQ
score of 80. *Id.* He also noted that E.S. exhibited average intellectual functioning
and scores in the average range for math problem solving, numerical operations,
and alphabet writing fluency. *Id.*

In sum, the ALJ noted that although E.S. did have some limitations, the
alleged severity of these limitations was inconsistent with the record as a whole. In
weighing the totality of the evidence presented, the ALJ determined that despite
E.S.'s limitations, records (including the IEP and Psychological Re-Evaluation)
indicate that E.S. is performing at an age-appropriate level in the functional
domain of acquiring and using information. Therefore, the ALJ's determination
that E.S. has a less than marked limitation in the functional domain of acquiring
and using information is supported by substantial evidence.

**2. Substantial evidence supports the ALJ's decision that E.S. has a less than marked limitation in the functional domain of interacting and relating with others.**

The ALJ also set forth the general standards that apply regarding the domain

of interacting and relating with others.

> This domain considers how well a child is able to initiate and sustain emotional connections with other, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of those possessions of others (20 C.F.R. 416.926a(i)).

> The regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age.  The child should begin to understand how to work in groups to create projects and solve problems.  The child should have an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand (20 C.F.R. 416.926a(i)(2)(iv)).

> Social Security regulation 20 C.F.R. 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of different ages might have.  The examples do not apply to a child of a particular age; rather they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in

asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

*Admin. Tr.* at 59-60.

After setting forth the above standards that apply to the domain of interacting and relating with others, the ALJ reasoned and concluded:

> <u>Since February 29, 2016, the claimant has had no limitation in interacting and relating with others as a result of the impairments present at the CPD.</u>  The record does not show that the claimant's ADHD symptoms have resulted in restrictions in the claimant's ability to engage in age-appropriate social interactions with peers or adults.  The claimant's alleged difficulties interacting with his siblings have not been associated with the ADHD diagnosis.

*Id.* at 60. (Emphasis in original)

Again, the ALJ determined based on his review of the record that E.S. had a less than marked limitation in the functional domain of interacting and relating with others. *Id.*  Suarez argues that the ALJ erred in this finding.  The limitations that Suarez mentions that seem related to the function domain of interacting and relating with others are: (1) E.S. yells at his mother when he is angry; (2) E.S. has a lot of negative behaviors and isolates at home when in trouble; (3) E.S. has a hard time expressing his feelings and talking to someone; (4) E.S. "shuts down" at times; (5) sometimes E.S. hits himself in the head when he is angry and upset; (6) E.S. does not always listen and respond to rules and directions given by his mother or other adults; (7) E.S. does not like to go to stores; (8) E.S. does

"flapping and other gestures" when he gets excited; and (9) E.S. still carries a security blanket.  The ALJ properly addressed these limitations.

Regarding E.S. yelling at his mom and exhibiting negative behaviors and isolation at home, the ALJ relied on Suarez's own testimony that E.S. gets along with his family well and that he enjoys playing with his brother. *Admin. Tr.* at 15. Regarding E.S. not listening and responding to rules and directions from adults, the ALJ noted that E.S. presented with cooperative behavior, coherent speech, and an appropriate mood during an April 2018 treating visit. *Id.*  Regarding E.S. having a hard time expressing his feelings, shutting down, hitting himself in the heard when angry, not enjoying visiting stores, flapping when excited, and carrying a security blanket, the ALJ noted that E.S.'s IEP identified that E.S.'s functional performance in the areas of behavior and social skills are age appropriate. *Id.*  The ALJ continued by noting that although the claimant presented as being immature for his age and exhibited speech irregularities and inconsistent eye movements, the ALJ found the evidence stating that E.S. displayed an appropriate mood, enjoys playing with his brother, enjoys seeing his friends in school, and believes that his teachers are nice more persuasive, supported, and consistent. *Id.*

In sum, the ALJ noted that although E.S. did have some limitations in the functional domain of interacting and relating with others, the ALJ decided that countervailing reasons supported a finding of a less than marked limitation in this

domain.  In weighing the totality of the evidence presented, the ALJ determined

that despite E.S.'s limitations, records indicate that E.S. is performing at an age-

appropriate level in the functional domain of interacting and relating with others.

Therefore, the ALJ's determination that E.S. has a less than marked limitation in

the functional domain of interacting and relating with others is supported by

substantial evidence.

### 3. Substantial evidence supports the ALJ's decision that E.S. has a less than marked limitation in the functional domain of attending and completing tasks.

The ALJ also set forth the general standards that apply regarding the domain

of attending and completing tasks.

> This domain considers how well a child is able to focus
> and maintain attention, and how well he is able to begin, carry
> through, and finish activities, including the pace at which he
> performs activities and the ease of changing activities (20
> C.F.R. 416.926a(h)).

> The regulations provide that a school-age child without
> an impairment should be able to focus his attention in a variety
> of situations in order to follow directions, remember and
> organize school materials, and complete classroom and
> homework assignments.  The child should be able to
> concentrate on details and not make careless mistakes in his
> work (beyond what would be expected in other children of the
> same age who do not have impairments).  The child should be
> able to change activities and routines without distraction, and
> stay on task and in place when appropriate.  The child should be
> able to sustain attention well enough to participate in group
> sports, read by himself, and complete family chores.  The child
> should also be able to complete a transition task (e.g., be ready
> for the school bus, change clothes after gym, change classrooms

without extra reminders and accommodation (20 C.F.R. 416.926a(h)(2)(iv)).

Social Security regulation 20 C.F.R. 416.926a(h)(3) sets forth some examples of limited functioning in this domain that children of different ages might have.  The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

*Admin. Tr.* at 58-59.

After setting forth the above standards that apply to the domain of interacting and relating with others, the ALJ reasoned and concluded:

> <u>Since February 29, 2016, the claimant has had no limitation in attending and completing tasks as a result of the impairments present at the CPD.</u>  The State agency reviewing psychologists considered the claimant's lack of ongoing treatment, the reports of the claimant's teachers regarding his performance in this area, and his demonstrated task completion abilities (as reflected in academic progress reports) and concluded that the claimant has not consistently experienced significant ongoing limitations in this area as a result of ADHD symptomatology.

*Id.* at 59.

Suarez argues that the ALJ erred in finding that E.S. has no limitation in the functional domain of attending and completing tasks.  The limitations that Suarez

21

mentions that seem related to the functional domain of attending and completing tasks are: (1) E.S. gets pulled out of regular classes for testing and accommodations; (2) E.S. has trouble paying attention; (3) E.S. complains that physical activities make things hurt; (4) E.S. struggles in reading and had three F's on his last report card; and (5) E.S. was switched to a simpler math class due to having difficulty with math.  The ALJ properly addressed these limitations.

Regarding E.S. being pulled out of regular classes for testing and accommodations, having trouble paying attention, struggling in reading and having three F 's on his last report card, and being switched to a simpler math class due to having difficulties with math, the ALJ stated that despite these struggles, E.S.'s IEP identified that his functional performance in organization and daily living skills are age appropriate.[4] *Admin. Tr.* at 16.  E.S. was also described as well-organized during an April 2018 treating visit. *Id*.

Regarding E.S. complaining that physical activities make things hurt, the ALJ relied on E.S.'s mother's testimony that E.S. can run, walk, and jump with no problems. *Id*. The ALJ also found statements from the February 2019 Psychological Re-Evaluation persuasive which stated that E.S. enjoys running,

---

[4] Although Suarez's testimony states that E.S. had three Fs on his last report card, a review of this report card indicates that E.S. only received one F. *See Admin. Tr.* at 252.

playing with his guinea pig, and jumping, and that E.S. is athletic and a fast runner. *Id*.

In sum, the ALJ found those reasons which supported a finding of no limitation in the functional domain of attending and completing tasks more persuasive.  In weighing the totality of the evidence presented, the ALJ determined that despite allegations of limitations, records indicate that E.S. does not meet the standard of having even a less than marked limitation in this domain.  Therefore, the ALJ's determination that E.S. has no limitation in the functional domain of attending and completing tasks is supported by substantial evidence.

### B.  The ALJ properly considered the February 4, 2019 Psychological Re-Evaluation.

Suarez argues that the ALJ erred and abused his discretion by failing to properly consider or articulate how he considered E.S.'s limitations under the functional domains using the Psychological Re-Evaluation from February 4, 2019. Suarez contends that this evaluation of E.S. is indicative of and would support findings of marked limitations in more than one functional domain.  Suarez maintains that the ALJ's failure to consider or fully explain how he considered this piece of evidence impacted the ALJ's decision.

When faced with conflicting medical opinions, it is true that an ALJ must "consider those medical opinions or prior administrative medical findings from

that medical source together . . . as appropriate." 20 C.F.R. § 416.1520c (2017).

However, the Psychological Re-Evaluation that Suarez requests be given this type

of consideration is not a medical opinion under the new regulations. 20 C.F.R. §

416.913(a)(2).

"A medical opinion is a statement from a medical source about what you can

still do despite your impairment(s) and whether you have one or more impairment-

related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A)

through (D) and (a)(2)(ii)(A) through (F) of this section. 20 C.F.R. § 416.913(a)(2)

(2017).  Further, "[m]edical opinions in child claims are about impairment-related

limitations and restrictions in your abilities in the six domains of functioning." 20

C.F.R. § 416.913(a)(2)(ii) (2017).

Here, Suarez argues that the ALJ erred by not affording preferential weight

to the Psychological Re-Evaluation from February 4, 2019, as this was a medical

opinion as outlined by the Social Security Regulations.  While this evaluation may

be said to be an "opinion" in the colloquial sense, in the context of these disability

benefits proceedings, this Psychological Re-Evaluation is comprised only of

"judgments about the nature and severity of [E.S.'s] impairments, [his] medical

history, clinical findings, diagnosis, treatment prescribed with response, or

prognosis." *Broaddus v. Kijakazi*, Case No. 3:20-cv-01418 (M.D. Pa. July 13,

2021); *see also* 20 C.F.R. § 404.1513(a)(3) (defining "other medical evidence").

24

As such, the ALJ was not required to evaluate the February 4, 2019, Psychological Re-Evaluation as a medical opinion and articulate how persuasive he found it to be. *Id.* Regardless, the ALJ expressly considered and relied upon this examination in determining the severity of E.S.'s impairments. *See Admin. Tr.* 14-16.

Additionally, the ALJ adequately explained his reasoning for finding the opinion of Dr. Karen Plowman, State Agency consultant, persuasive. The ALJ explained that the opinion is supported by objective findings and is consistent with claimant's mother's indication that E.S. gets along well with his family and that he has friends at school. *Id.* at 16.

In sum, the ALJ adequately addressed E.S.'s alleged limitations. The ALJ then chose between conflicting record evidence, finding the evidence and opinions he found were more congruent with E.S.'s medical records and activities of daily living more persuasive. Suarez also seems to indicate that it should follow that if the ALJ found that E.S. had at least a marked limitation in the domain of caring for himself, then this must necessarily indicate that E.S. has at least a marked limitation in additional functional domains. However, it is the right and responsibility of the ALJ to make such assessments, and we find that substantial evidence supported the ALJ's decision. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d

Cir. 1999).  Suarez's argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ).  Because we are not permitted to reweigh the evidence, we conclude that the ALJ did not err in his finding of less than marked limitation in the functional domains of acquiring and using information, interacting and relating with others, and attending and completing tasks.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Suarez.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge